In this case the plaintiff produced a grant from Earl Granville to Joseph Davenport for the land in question, bearing date November, 1756. He then produced a deed from Edmund Taylor and John Potter to Howell Moss, for the same land, bearing date the _____ day of June, 1771; thirdly, a deed for the land in dispute from Howell Moss to Vinkler Jones, bearing date the _____ day of November, 1773; and last, a deed from Vinkler Jones covering the same land, to the lessor of the plaintiff, bearing date the _____ day of June, 1798.
Under this title he produced witnesses to prove an actual possession in himself or those (or some of them) under whom he claimed. It appeared that one Searcy, as well as one Wilkins, had been possessed of the land in question, but at a period ulterior to the date of the deed from Taylor and Potter to Moss. After this last conveyance one witness said that Moss placed his father on the land, who lived on it for two years. Immediately after which time Vinkler Jones took actual possession of it and held it for two years. Two other witnesses said that Vinkler Jones *Page 217 
had actual possession of it four or five years. One of the latter two witnesses said that this last mentioned possession was before 1775, because in that year he went to Kentucky, and knew nothing about a possession of it afterwards. It also appears that some time after the expiration of Jones's possession, a free man of color, by the name of Henry Smith, lived upon the land, by the consent of the present plaintiff, two years; and that some time after he moved away another free man of color by the name of Hardy Artis lived on the land, also by the consent of the plaintiff in this cause. None of the witnesses (281) spoke positively as to the time that any one person had had actual possession of the land, but only from the best of their recollection. It appeared that an old field on the land had been for many years called Jones's Old Field.
The plaintiff produced no evidence to show the defendant in possession of the land; nor did the defendant object to the plaintiff's recovery for want of such proof; nor did the court in its charge to the jury say anything on that head. It did not appear that the defendant had any title to the land in dispute.
The court directed the jury to find for the defendant, unless they believed, from the evidence before recited, that the plaintiff had had a continued and uninterrupted actual possession of the land for seven years.
The jury found a verdict for the plaintiff. The defendant moved for a new trial, which the court refused.
It appeared that this suit had been instituted in the county court of Granville, and there tried, which resulted in a verdict for the plaintiff. That the defendant appealed to this Court, and that a trial had likewise been had, when a verdict was again found for the plaintiff and a new trial granted.
It is now referred to the Supreme Court to decide whether or not a new trial should be granted.
It is further directed by the judge to be stated that the defendant's counsel moved the court for a nonsuit, on the ground that a seven years possession under color of title had not been proved; and further, that James Hamilton, the real defendant, obtained title to the land in dispute after the commencement of this action.
The repeated adjudications which have occurred in this State, throughout a long period of time, which may be dated, at least, as far back as the independence of the State require it now to be considered as a fixed rule of property that the possession under a color of title must be a continued one of seven years in order to enable a person to recover in an action of ejectment. (282) *Page 218 
It has been very justly supposed, both by those who made the law of 1715 and by those who have administered it, as far back as we have the means of ascertaining, that this was a reasonable period to warn all adverse claimants that the person in possession set up an exclusive right, and to challenge them to come forward and exhibit whatever claim they might have against such possession.
But a possession for this period can only meet the spirit and design of the law when it is unbroken and uninterrupted; for as it is founded on the supposition that the possessor really believes he has title, this idea is weakened rather than confirmed by his occasionally withdrawing from the possession and leaving the land without cultivation, without occupancy, and without a tenant.
Thus the occasional exercise of dominion by broken and unconnected acts of ownership over property which may be made permanently productive is in no respect calculated to assert to the world a claim of right; for such conduct bespeaks rather the fitful invasions of a conscious trespasser than the confident claims of a rightful owner.
In this case the first possession after the date of the deed to Moss is that in his father, which continued for two years. This is followed by Vinkler Jones's possession, which two witnesses say continued four or five years.
It is to be observed, however, that one of these witnesses is altogether silent as to the periods when this possession began or ended; and, therefore, his testimony is not so satisfactory or convincing as that of the other, who gives a reason for his remembrance, and places the possession before the year 1775, because he then went to Kentucky. This possession, therefore, must have been before the date of Jones's deed, and as early as that of Moss's, from which to June, 1775, would form only a period of five years.
This is believed to be a correct analysis of the testimony; and if so, there are but four or five years continued possession proved since the color of title accrued. The other possession by the persons of (283) color is altogether too vague to be taken into the account; for neither the period of its commencement nor that of its termination is ascertained by proof; it is not sufficiently connected with the other possession nor with the color of title.
The law arising from the facts which are in proof does not vest a title in the plaintiff; and if the verdict stands, the plaintiff will have recovered land of which he is not the owner.
It would introduce much uncertainty into the law, and place land titles upon a very precarious foundation, if the Court were to acquiesce in a verdict so novel because other juries had done the same. In cases *Page 219 
of this sort the law of a case cannot be separated from its justice. They are, indeed, convertible terms; for where the law does not give title to a plaintiff, it cannot be just that he should recover the land and turn another out of possession. We are therefore of opinion that there must be a new trial.
Judgment reversed.
HALL, J., gave no opinion; it being an appeal from his decision.
NOTE. — See, upon the first point, Strudwick v. Shaw, 1 N.C. 34,S. c., 2 N.C. 5, and the cases cited in the note. Upon the second point, see Murphy v. Guion, 3 N.C. 162, and the cases referred to in the note on the second point in that case.
(284)